## ROBERT RUNNELS V. THE STATE.

### No. 2880.    Decided December 16, 1903.

**1.—Statutes Construed.**

Article 647, Penal Code, which provides that if any person shall mingle or cause to be mingled any other noxious potion or substance with any drink, food or medicine, with intent to kill or injure any other person, or shall willfully poison any spring, etc., he shall be punished, etc., defines an offense.

**2.—Evidence—Objection to Question.**

When, pending an objection to a question by the district attorney asking the witness whether, when he went to a store for syrup and things, he found it necessary to prowl around in their back room, the witness answered in the negative before the court could rule on the objection, it was error not to exclude such question and answer on the court's own motion.

**3.—Same—Suspicion.**

An incident which occurred shortly before the commission of the alleged offense, but which fails to connect defendant with or is a part of the transaction which constitutes the offense and is calculated to cast suspicion on him, is inadmissible in evidence.

**4.—Same—Isolated Circumstance.**

Before an isolated circumstance is admissible against one accused of crime, there must be some evidence of a tangible character connecting him with it.

**5.—Same—Character of Witnesses.**

After the State's witnesses had been attacked on the ground that their testimony differed from that on the examining trial, it was permissible to prove their character for truth and veracity.

**6.—Charge of the Court—Intent.**

. The appellant objected to the court's charge because it did not advise the jury that the defendant must mingle enough of the noxious potion or substance with the drink to kill or injure any person. Held not error, as the intent to injure is the gist of the offense, if the potion or substance used is noxious or poisonous.

**7.—Same—Drink.**

Simple syrup which was being prepared to be used with other ingredients as a drink was in such state under the terms of the statute a drink, and one mingling a poisonous or noxious substance with it would be guilty of an offense.

**8.—Same—Circumstantial Evidence.**

Where the evidence showed that the defendant threw something toward the vessel containing the simple syrup and some of the substance about this vessel was found to be strychnine, but the substance found in the vessel, although similar to that found outside, was not analyzed and no witness testified that the substance was thrown into the vessel, there was no direct testimony that defendant mingled a noxious or poisonous substance with the syrup, but at most only attempted to do so, which in itself is no offense, and a charge on circumstantial evidence should have been given.

Appeal from the District Court of Nacogdoches. Tried below before Hon. Tom C. Davis.

Appeal from a conviction of mingling a noxious potion with a certain drink, with intent to kill or injure persons to the grand jurors unknown; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Brewer & Dial, Mims & King,* and *Young & Stinchcomb,* for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of mingling a noxious potion with a certain drink, with intent to kill or injure persons to the grand jurors unknown. His punishment was fixed at two years confinement in the penitentiary.

Appellant contends there is no law sufficiently defining this offense. The prosecution was brought under article 647, Penal Code, which says: "If any person shall mingle or cause to be mingled *any other noxious potion* or *substance* with any drink, food or medicine, with intent to kill or injure any other person, or shall willfully poison any spring, * * * he shall be punished," etc. His contention is that there is something material omitted from the article, inasmuch as the phrase "any other noxious potion or substance," evidently refers to something preceding. And appellant shows in this connection, that as the statute formerly stood, which was article 2198, Paschal's Digest, being article 537 of the Penal Code as enacted in 1858, it read, "If any person shall mingle any poison, or any other noxious potion or substance with any drink," etc.; that the omission of the preceding portion of said article by the codifiers of 1879 rendered the expression "any other noxious potion or substance" unintelligible, and the article as it now stands does not define any offense. In this connection he further contends that we can not reject the word "other" in said article, so as to define an offense, as this would be judicial legislation, which is not authorized. In Braun v. State, 40 Texas Crim. Rep., 286, it was held that, although the codifiers had failed to bring forward in the new code certain provisions of an original act, yet the court in considering an article brought forward could look back to the original act to construe the same, and ascertain its meaning with reference to another provision of the code in the same chapter. In that connection the court, quoting from Black on Intepetation of Laws, pp. 368-9, said: "When the language of the code or revision as it stands would lead to absurdity or highly improbable results, it may be compared with the language of the original statute to ascertain if the phraseology has not been changed by mistake or inadvertence." So, without holding that we can interpolate or bring forward a portion of an article that formerly existed

as a part thereof after the same has been left off for so many years, so as to constitute it a part of the article in question, we hold, in accordance with the principle indorsed in Braun's case, that we can look back to the original statute in order to determine whether the same was left off by mistake or inadvertence, and to aid in construing and interpreting the present act. However, the present act must stand on its own language as defining an offense; and if, as it appears it does not constitute an offense, then a prosecution thereunder can not be maintained. Now, whether or not we reject the word "other" as it now appears in article 647, Penal Code, we hold that it does define an offense. However, it may become a question as to whether or not noxious potion or substance means or refers to any character of poison, inasmuch as we have no antecedent term in the statute; and so that, so far as an offense is concerned, we must depend wholly upon what is a noxious potion or substance. If noxious potion or substance embraces poisons, then it comes within the statute. And by way of interpreting what the article may mean in this respect, as stated before, we look back to see what was contained in the original act, to wit, "poison or other noxious potion or substance"—thus treating "noxious potion or substance" as some character of poison. We make these remarks because accurately speaking there may be some distinction between a poison and a noxious potion or substance. That is, poison has been defined "As any substance which when applied to the body externally, or in any way introduced into the system without acting mechanically, but by its own inherent qualities, is capable of destroying life." See 2 Beck's Med. Jur. Wharton & Stille define poison, "As a substance having an inherent deleterious property which renders it, when taken into the system, capable of destroying life." And in this connection they say, "Questions may arise as to the applicability of the term to substances which destroy life by mechanical means, such as powdered glass, etc." (See sec. 493.) While "noxious" means "hurtful, harmful, baneful, pernicious, destructive," etc. (Webster's Dictionary.) And potion means, "draught, used as a liquid, medicine or dose." (See Webster.) So we take it that "potion" as used in the statute applies to some hurtful or baneful liquid; and "noxious substance" would mean some solid of a hurtful or baneful character. So that "noxious potion" or substance is a broader term than poison. A poison would not include powdered glass, or boiling water, while "noxious potion" or substance would not only embrace poisons, but the latter. See People v. Van Deleer, 53 Cal., 149. Accordingly we hold that the statutes defines the offense charged against appellant.

Appellant assigns as error the action of the court permitting the district attorney to ask witness John Burrows, "When you went to Perkins Bros.' for syrup and things, did you find it necessary to prowl around in their back room?" It appears from bill number 2 presenting this matter, that the witness answered the question in the negative, after

objection made but before the court could rule upon the objection. The court explains this by stating that there was no motion made to have the answer of the witness withdrawn from the jury. We think the question was sufficiently presented; and if, as stated in the bill, while the court was meditating as to his ruling the witness answered the question, the court of his own motion should have excluded it.

By the third bill he calls in question the action of the court permitting the witness Rafe Stripling to testify for the State, that just prior to the day this offense was alleged to have been committed, he saw appellant in the nighttime rise up back of .the drugstore (the place where the offense was alleged to have been subsequently committed), and some twenty-five or thirty feet from said store, and walk towards witness; that he asked witness how he was getting along; witness asked him how he felt; and appellant said he was kinder tired, and said he was up the night before with the Woodmen Circle, and took in about $7.50; and appellant then asked witness if he stayed open, and he told him no. He then walked on up to the platform, came in the store, stayed a minute or two, then went on up toward the prescription case, and then went on to the front, and then on out at the front door. We fail to see any connection between this testimony and the alleged offense. Evidently it was intended to show that appellant for some cause was lurking around the back of the store at night for some purpose; and was calculated to cast suspicion on him; that he was either intending a burglary of the store or some other offense. Indeed, if we look to the statement of facts, we find that appellant was driven to an explanation in his testimony as to the reason for his being at the back of the store on that occasion. If this incident was shown to be a part of the transaction, or if it had been shown that the offense was committed by means of burglary on that night, or soon thereafter, and the case was depending wholly on circumstantial evidence, it might be admissible. But, so far as we are advised, it is not connected with the offense in anywise, unless that incident afforded the reason for the State introducing testimony, as it did, that on the occasion when the alleged offense was committed they were watching appellant. But this would scarcely afford a reason for that. Still the jury would be prone to conclude that appellant had put himself under the ban of suspicion by being in the rear of the prosecutor's store that night, and consequently they were watching him. This character of testimony could not but prove hurtful to appellant. It might be resorted to by them, in case the evidence of guilt was doubtful, to assist them in determining, that because appellant had been previously caught in a suspicious place, he must have placed the poison in the tub.

What we have said as to the foregoing bill also applies to the next bill, where the State was permitted to show, over appellant's objections, that Perkins, who was one of appellant's employers, sometime prior to

the 25th of July, or maybe since then, found a bottle of strychnine in his drugstore out of its usual place; that he found a bottle in the drawer of the old prescription case which sets in the back room. No connection was shown between appellant and this bottle of strychnine. There must be some testimony of a tangible character tending to connect appellant with an isolated circumstance before it is admissible against him.

Appellant reserved a number of exceptions to the evidence offered and introduced by the State to prove the good character of the State's witness Hazelwood, and also of Henry Millard, for truth and veracity in the community in which they lived. These bills, as explained by the court, show that this testimony was introduced after these witnesses had been attacked by appellant by showing they had testified to material facts at the examining trial different from their testimony on this trial. This was permissible. White's Ann. C. C. P., sec. 1119.

Appellant contends that the court erred in a number of charges. Among others, he insists that the court was in error, in telling the jury, that, if they found appellant mingled strychnine in simple syrup, and that the same was a drink, and that said strychnine was a noxious potion or substance, with intent to injure or kill persons whose names were to the grand jurors unknown, etc., to find him guilty, although in fact he did not mingle enough strychnine with the syrup to injure or kill any person, appellant's insistance being that it is necessary, under the statute, to mingle enough of the noxious potion, to at least injure any person who might take a drink of the mixture. We do not so construe the statute. We think it depends on the intent, rather than on the means to accomplish the result. Of course, if some harmless drug should be mixed with some drink or substance, and such drug was absolutely harmless, the offense would not be made out; but if the drug was poisonous, or noxious, and it was mingled with intent to injure, although it may not accomplish the result, the offense is made out. As to the intent of appellant, we think this was amply guarded in a subsequent charge of the court, although this was excepted to by appellant. The court instructed the jury, if appellant mixed the noxious potion with the drink merely, with the intent to make it bitter, and with no intent to injure anyone, he would not be guilty of the offense. This, we think, is sufficient, if not more liberal than the law authorized.

Appellant further contends that the court was not authorized to submit to the jury that simple syrup was a drink, inasmuch as the evidence showed only that it was being prepared to be used with other ingredients as a drink. We think in such state it was a drink, under the terms of our statute; and appellant would be guilty of mingling a poisonous or noxious substance with the simple syrup, to the same extent—just as if some one were preparing a toddy, and had placed the sugar and water in a glass intending subsequently to pour the whisky into it, and in the interim some one should mix a poison with the sugar and water.

Appellant also contends that the court should have given a charge

on circumstantial evidence, urging that the case was not made out by positive testimony; that no one in fact saw appellant throw or place any strychnine in the tub of simple syrup; that the most the State's witnesses could say was that they observed appellant throw a substance towards the tub, and subsequently they found a white granulated substance on the board on which the tub set, and some also on the handle of the wooden paddle in the tub; and one or two witnesses state that they saw something on top of the syrup which looked to them like it was the same substance they saw on the plank and paddle. The substance on the plank and paddle was analyzed, and found to be strychnine. The contents of the tub was not analyzed. While the testimony here shows positively that appellant threw something toward the tub of simple syrup, and it may be conceded that this substance which was found on the board on analysis was shown to be strychnine, yet no witness testified that the substance was thrown into the tub. The most that can be said is that one or two witnesses saw something on the surface of the simple syrup that appeared to be similar to the substance found on the board and paddle. The statute requires that the offender "shall mingle" the noxious potion with a drink, etc., before he can be found guilty. If he attempted to mingle the strychnine with the simple syrup, and failed to put or throw any of the poison into the tub, he could not be found guilty of mingling poison with drink in the tub. Of course, this could be proved by circumstantial evidence; and it occurs to us that the State here relied on circumstances to show that the strychnine was thrown or put into the tub. We believe that this question should have been submitted to the jury by a charge on circumstantial evidence.

For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

I agree to disposition of case.—BROOKS, Judge