

# THE ATTORNEY GENERAL
## OF TEXAS

GROVER SELLERS

AUSTIN 11, TEXAS

~~XXXXXXXXXXX~~RD
ATTORNEY GENERAL

Honorable M. H. Barton
County Attorney
Rusk County
Henderson, Texas

Dear Sir:

Opinion Number 0-6720
Re: Vote required for city
or county to issue bonds
for city or county hos-
pital. Also, from what
rendition sheet shall
list of qualified voters
be taken?

This is in reply to your letter of July 16, 1945, which reads as follows:

"Will you kindly give me an opinion in regards
to a city or county voting a bond issue for a
city or county hospital? Does it require a
two-thirds majority or just a majority of the
qualified taxpaying voters when the tax rate
would not be raised any higher than the present
rate? The laws are conflicting, in some places
it says parks, etc., two-thirds majority, where
other places it says roads and municipal build-
ings is a majority.

"A bond election that would be held in September,
1945 would the qualified voters be taken from
the rendition sheet for 1944 or the one rendered
in 1945."

Article 4478, Chapter 5, Title 71, Vernon's Annotated
Civil Statutes, 1925, provides, in part, as follows:

"The commissioners court of any county shall have power to establish a county hospital and to enlarge any existing hospitals for the care and treatment of persons suffering from any illness, disease or injury, subject to the provisions of this chapter. At intervals of not less than twelve months, ten per cent of the qualified property tax paying voters of a county may petition such court to provide for the establishing or enlarging of a county hospital, in which event said court within the time designated in such petition shall submit to such voters at a special or regular election the proposition of issuing bonds in such aggregate amount as may be designated in said petition for the establishing or enlarging of such hospital. Whenever any such proposition shall receive a majority of the votes of the qualified property tax payers voting at such election, said commissioners court shall establish and maintain such hospital and shall have the following powers: * * *."

In consideration of the provisions of Article 4478, you are advised that it requires only a majority vote of the taxpayers of the county to authorize the officers of a county to issue bonds for the establishing or enlarging of a county hospital. If the city involved in your question is a Home Rule city, then it would come under the provisions of Section 10, Article 1175, Revised Civil Statutes of Texas, which provides, in part as follows:

"10. The power to control and manage the finances of any such city; to prescribe its fiscal year and fiscal arrangements; the power to issue bonds upon the credit of the city for the purpose of making permanent public improvements or for other public purposes in the amount and to the extent provided by such charter, and consistent with the Constitution of this State; provided, that said bonds shall have first been authorized by a majority vote by the duly qualified property taxpaying voters voting at an election held for that purpose. * * * "

Therefore, in consideration of the provisions of Article 1175, if the city involved in your question is a Home Rule city, it would require only a majority vote to authorize the city officials to issue bonds for the establishment of a city hospital.

We have been unable to find any specific statute or ruling of the courts of this State that determines clearly and emphatically whether a city, not a Home Rule city and operating under the general law, could issue hospital bonds upon a majority or a two-thirds vote.

The Twenty-sixth Session of the Texas Legislature, 1899, enacted Chapter LXVII, and Section 1 of said chapter provides as follows:

"Section 1. Hereafter it shall be unlawful for the commissioners' court of any county, or the city council of any incorporated town or city in this State to issue the bonds of said county for any purpose authorized by law, unless a proposition for the issuance of such bonds shall have been first submitted to a vote of the qualified voters, who are property taxpayers of said county, incorporated town or city, and unless a majority of the said qualified property taxpayers, voting at said election, is in favor of the proposition for the issuance of bonds, then the said bonds shall not be issued. If the proposition for the issuance of bonds be sustained by a majority of the said property taxpayers voting at said election, then the said bonds shall be authorized and shall be issued by the said commissioners' court; provided, that this act shall not be construed to authorize and render valid bonds without being first submitted to the Attorney-General and certified to by him as now required by law."

The same Legislature, namely, Twenty-sixth Legislature, enacted Chapter CXLIX, and Section 1 of said Act provides as follows:

Honorable M. H. Barton, page #4 (0-6720)

"Section 1.  Hereafter it shall be unlawful for
the commissioners' court of any county, or the
city council of any incorporated town or city
in this State, to issue the bonds of said county,
or town or city, for any purpose authorized by
law, unless a proposition for the issuance of
such bonds shall have been first submitted to a
vote of the qualified voters, who are property
taxpayers of said county, town or city, and unless
a majority of the said qualified property taxpayers,
voting at said election, is in favor of the proposition
for the issuance of bonds, then the said bonds shall
not be issued.  If the proposition for the issuance
of bonds be sustained by a majority of the said
property taxpayers, voting at said election, then
the said bonds shall be authorized and shall be
issued by the said commissioners' court, or said
town or city council; provided, that this Act shall
not be construed to authorize and render valid bonds
without being first submitted to the Attorney-General,
and certified to by him, as now required by law."

The Revised Civil Statutes of 1911 combine Chapter LXVII
and Chapter CXLIX, making them Article 605, which provides as
follows:

"Article 605.  Election on bonds required.--- It shall
be unlawful for the commissioners' court of any county,
or the city or town council of any incorporated town
or city in this state, to issue the bonds of said
county, or town or city, for any purpose authorized
by law, unless a proposition for the issuance of
such bonds shall have been first submitted to a vote
of the qualified voters, who are property taxpayers
of said county, town or city; and unless a majority
of the said qualified property taxpayers, voting at
said election, be in favor of the proposition for the
issuance of bonds, then the said bonds shall not be
issued.  If the proposition for the issuance of bonds
be sustained by a majority of such property taxpayers,
voting at such election, then such bonds shall be
authorized and shall be issued by such commissioners'
court, or city or town council; provided, that this

article shall not be construed to authorize and render
valid bonds without being first submitted to the attorney
general, and certified to by him, as now required
by law. (Acts 1899, pp. 103 and 258.)"

The codifiers of the 1925 Revised Civil Statutes divided
Article 605 of the Revised Civil Statutes of 1911 and made two
articles of the same, namely, Article 701 of Chapter 1,
Title 22, and Article 719 of Chapter 2, Title 22, which arti-
cles now provide as follows:

"Article 701. Shall hold election. -- The bonds of
a county or an incorporated city or town shall never
be issued for any purpose unless a proposition for
the issuance of such bonds shall have been first
submitted to the qualified voters who are property
taxpayers of such county, city or town. Acts 1899,
pp. 103 and 258."

"Article 719. Requisite vote. -- If a majority of the
property tax paying voters voting at such election
shall vote in favor of the proposition, then such
bonds shall be thereby authorized and shall be issued
by the commissioners court. Acts 1899, pp. 103 and
258."

Article 719, as placed in the Revised Civil Statutes of
1925, pertains only to bonds authorized by Article 718. Evi-
dently the codifiers of the 1925 Civil Statutes intended to
place a similar provision as contained in Article 719 under
Chapter 1, Title 22, which relates to "General Provisions and
Regulations," but through oversight failed to include such a
provision.

In Runnels v. State, 77 S. W. 458, 459, the Court of
Criminal Appeals of Texas had before it a similar question, and
we quote from said opinion as follows:

"In Braun v. State, 40 Tex. Cr. App. 286, 49. S.W.
620, it was held that, although the codifiers had
failed to bring forward in the new Code certain
provisions of an original act, yet the court, in
considering an article brought forward, could look
back to the original act to construe the same,
and ascertain its meaning with reference to another
provision of the Code in the same chapter. In that

connection the court, quoting from Black on Inter-
pretation of Laws, pp. 368, 369, said:  'When the
language of the Code or revision as it stands would
lead to absurdity or highly improbable results, it
may be compared with the language of the original
statute to ascertain if the phraseology has not been
changed by mistake or inadvertence.'  So, without
holding that we can interpolate or bring forward a
portion of an article that formerly existed as a
part thereof after the same has been left off for
so many years, so as to constitute it a part of
the article in question, we hold, in accordance
with the principle indorsed in Braun's Case, that
we can look back to the original statute in order
to determine whether the same was left off by
mistake or inadvertence, and to aid in construing
and interpreting the present Act. * * *"

We are, therefore, of the opinion that the codifiers of
the 1925 Revised Civil Statutes "by mistake or inadvertence"
failed to bring forward and place under the provisions of
Chapter 1, Title 22, the required number of votes necessary
to authorize a city to issue bonds under said chapter.

Although the Revised Civil Statutes of 1925 failed to
provide for the required vote, the Attorney General's Department
and the Bar of the State of Texas have consistently since
1925 approved all bond issues coming under the provisions of
Chapter 1, Title 22, when said bond issues were authorized by
a majority vote.

Taking into consideration the legislative history of
Articles 701 and 719, the authority above quoted and the policy
of the Attorney General's Department and the Bar of this
State, we are of the opinion that only a majority vote is
required to authorize a city to issue bonds for the establish-
ment of a hospital.

Article 7151, Vernon's Annotated Civil Statutes, provides,
in part, as follows:

"All property shall be listed for taxation between
January 1 and April 30 of each year, when required
by the assessor, with reference to the quantity
held or owned on the first day of January in the
year for which the property is required to be listed

> or rendered. Any property purchased or acquired
> on the first day of January shall be listed by or
> for the person purchasing or acquiring it. ***"

Article 1043, Vernon's Annotated Civil Statutes, provides as follows:

> "Each person, partnership and corporation owning
> property within the limits of the corporation shall,
> between January first and April first of each year,
> hand to the city assessor and collector a full and
> complete sworn inventory of the property possessed
> or controlled by him, her or them, within said
> limits on the first day of January of the current
> year. If the fiscal year of a municipal corporation
> runs otherwise than the calendar year, such corpora-
> tion may by ordinance require said inventory to be
> made as of the first day of such fiscal year, in
> which case the inventory shall be handed to the city
> assessor and collector within the first three months
> of the fiscal year. Acts 1875, p. 113; G.L. vol. 8,
> p. 485; Acts 1934, 43rd Leg., 3rd C.S., p. 50, ch.
> 27, sec. 1."

Considering the above quoted articles, we are of the opinion that the qualified voters of a county or city voting at a bond election to be held in September, 1945, should be taken from the rendition sheet for the year 1945.

Very truly yours

ATTORNEY GENERAL OF TEXAS

/s/ R. J. Long

By          R. J. Long
         Assistant

RJL-s-eb

APPROVED JULY 31, 1945

/s/ Ocie Speer, Acting

ATTORNEY GENERAL OF TEXAS
(Acting)

APPROVED
OPINION
COMMITTEE
By  G.W.B.
    Chairman