The **TAYLOR WINE COMPANY, Inc.,**
Plaintiff,

v.

**Ralph F. CELMER, Defendant.**

**ULTIMATE RESEARCH & DEVELOPMENT CORP., Plaintiff,**

v.

The **TAYLOR WINE COMPANY, Inc.,**
Defendant.

Nos. Civ. 10909, 10931.

United States District Court
W. D. New York.

Findings and Conclusions
June 29, 1967.

Order Amending Finding
Oct. 18, 1967.

Mason, Mason & Albright, Washington, D. C., for Taylor; William B. Mason and Penrose L. Albright, Washington, D. C., of counsel.

Hoffman Stone, Rochester, N. Y., for Celmer and Ultimate Research.

HAROLD P. BURKE, District Judge.

FINDINGS OF FACT

1. The Taylor Wine Company, Inc., is a New York corporation having its business and offices at Hammondsport, N. Y.

2. Ralph F. Celmer resided at 28 W. Morris Street, Bath, N. Y., at the time of service of the complaint in Civil 10,909. He now resides at 11 6th Street, S. E., Winter Haven, Florida.

3. Ultimate Research and Development Corp. is a New York corporation. At the time of the service of the complaint in Civil 10,931 its place of business was at Rochester, N. Y. Its address now is the same as that of Celmer, its President.

4. These actions involve United States Patent No. 3,083,104 issued March 22, 1963 to Ralph F. Celmer. The patent has been assigned to and is now owned by Ultimate Research and Development Corp. The patent relates to methods for

recovering liquids from vegetative materials.

5. Celmer, verbally on April 26, 1963 and by writing dated October 30, 1963, after having been allowed in September and October, 1963 to inspect the pressing of grapes at the Taylor Winery, charged that the process used by Taylor infringed the Celmer patent.

6. On April 29, 1964, The Taylor Wine Company, Inc., commenced Civil Action 10,909 for a declaratory judgment that the patent is invalid, or in the alternative, not infringed by Taylor's process. On February 19, 1964, the patent was assigned to the newly formed Ultimate Research and Development Corp. That corporation on May 18, 1964 instituted Civil 10,931 against The Taylor Wine Company, Inc., for infringement. The actions were consolidated for trial.

7. Celmer claims as his invention the following steps in extracting juices from vegetables or fruit: (a) fluidizing the fruits or vegetable pulp by crushing or macerating, with or without a pectic enzyme preparation; (b) cellulose fibers predominantly in the range of 1–10 mm. in length are added to the fluidized pulp in the proportion of from 0.5% to 5% by weight; (c) compressively extracting the juice from the mass.

9. On October 9, 1962 Taylor was informed by Celmer, through his attorneys, of the then pending application for the patent. On January 15, 1963 Celmer's patent attorneys were given information concerning certain claimed prior art and usage. Such claimed prior art and usage included Rohm & Haas Bulletin S.P. 13, published in 1950, disclosing the treatment of grape pulp with a pectic enzyme at the crusher and U.S.D.A. Article AIC–263, published in 1950, disclosing vegetative pulp treated with a pectic enzyme and a pressing aid of cellulose fibers before pressing.

10. Celmer has been engaged in food pressing research for more than twenty-five years. He is author of a number of articles in the food processing field.

He knew of the claimed prior art referred to above even prior to its submission to his patent attorneys. He knew of United States Patent No. 2,235,028 of Leo et al., issued in 1941, which disclosed the use of cellulose fibers as a pressing aid for vegetative pulp. This patent was called to his attention in 1961 in the course of litigation with the Concord Grape Cooperative Development Association.

11. The U.S.D.A. Article AIC–263, the Rohm & Haas Bulletin, and the Leo patent, disclosed fruit processing processes in which the fruit is made more fluid by crushing, with or without a pectic enzyme, a pressing aid of cellulose fibers is mixed in the fruit pulp and the mixture is thereafter pressed to extract juice low in solids.

12. Prior to 1962, Taylor extracted grape juice by the rack and frame process. Crushed grapes are loaded into a press cloth, which is laid on a lattice-work rack and laterally supported by a frame about four inches deep and about four feet square. Outer portions of the cloth are folded over the grapes to form what is called a cheese. The frame is then removed, a second rack is placed on top of the cheese. The process is repeated until a stack of cheeses is built up, usually about four feet high. The cheeses set up, first under their own weight, then under a dead weight placed on top of the stack. They are then pressed by a hydraulic or screw press.

13. In 1962 Taylor installed new pressing equipment including a battery of Valley stemmer-crushers to macerate the grapes and a battery of ten Willmes presses. It also installed a battery of ten treatment tanks, one for each of the Willmes presses, with an agitator in each of the tanks for further maceration of the grape pulp.

14. The Willmes press was developed in West Germany and introduced in the United States in 1952. The Willmes press operates on the same basic theory as the rack and frame process except that the pressure element acts from the inside of the press against a cylindrical cloth rather than exteriorly through the frame

containing grape pulp. The Willmes press is used by Taylor in a batch pressing operation. Wine makers prefer batch pressing methods rather than continuous pressing.

15. The Willmes press is an improvement over the rack and frame press formerly used by Taylor. It requires less labor, is more sanitary, and yields more juice per ton of grapes because the grape pulp can be recycled. The mechanical principle of pressing in the Willmes press and the rack and frame press are the same. Celmer's research was not responsible for the commercialization of the Willmes press or the stemmer-crushers now used by Taylor. Taylor did not derive any benefit from Celmer's research. It developed its process independently therefrom.

16. No perceptible change in the degree of maceration of the grapes at the Taylor winery was brought about by the new stemmer-crushers which were installed. Taylor used a cellulose pressing aid (Solka Floc) as early as 1952. Subsequently it has included a cellulose pressing aid as part of its process.

17. Georgianier, used since 1963 in sheet form as a pressing aid by Taylor, is a sulphate cellulose product of Rayonier, Inc. It has about 7% fines by weight and an alpha cellulose content of less than 90% by weight. Fines are that part of a cellulose material that will pass through a 100-mesh screen.

18. Georgianier is not "alpha-cellulose fiber" or alpha-pulp as those terms are used in the trade. Georgianier is not substantially free from fines. No effort has been made to remove fines from Georgianier. Georgianier is not purified according to trade use of the term "purified".

19. The evidence does not establish that the process claimed by Celmer has contributed in any significant degree to the commercial success or advantages of the process used by Taylor. Existing licenses under the patent are the result of a compromise of litigation with the Concord Grape Cooperative Development Association. No royalties have been paid for licensing the Celmer patent.

20. The evidence does not establish that the present process used by Taylor was derived from the Celmer patent, nor that there has been recognition by the trade that the invention is meritorious or that acquiescence by the trade exists as to the validity of the patent.

21. Georgianier is not a material defined by the claims of the Celmer patent, nor an equivalent. The pectic enzyme in the proportions used by Taylor is not equivalent to the enzyme proportions set forth in the patent claims.

22. None of the prior art urged by Taylor anticipates the invention as claimed in the Celmer patent and as characterized therein, nor does it render it obvious.

23. Celmer did not obtain his patent through fraud, nor was his conduct in dealing with the patent office fraudulent in any way, nor did it render the patent unenforceable.

24. Claims 1, 2, 22, 23, 24, 25, 30 and 31 are not anticipated by prior public use more than one year before its effective filing date by the process at the Teagarden Co. (now Safeway) plant located at Grandview, Washington.

25. The Celmer patent is not invalid under 35 U.S.C. § 103 in claiming a process for extracting juice from vegetative pulp. The claimed process is not obvious in view of the disclosures of Rohm & Haas Bulletin SP–13, U.S.D.A. Article AIC–263, and the Leo et al., patent.

26. The Celmer patent is not invalid under Section 35 U.S.C. § 112 as being inaccurate, vague, and indefinite to one skilled in the art, in the description of the pressing aid of cellulose fibers used in the claimed process.

27. The Taylor Wine Company, Inc., has not infringed any of the Claims 1, 2, 22, 23, 24, 25, 30 and 31. The cellulose pressing aid Georgianier used by Taylor is not within the scope of the patent claims.

28. Celmer owns 100% of the stock of Ultimate Research and Development Corp. The only employees of the corporation are the officers, who include Celmer and his immediate family. The corporation has no income and no substantial assets other than the patent in suit and foreign equivalents thereof.

29. At the trial (pages 248–253) certain testimony of Celmer was received over objection concerning oral discussions of uncited prior art with the patent office Examiner during the time that his patent application was pending. This testimony was tentatively received. Upon mature consideration, I determine that the testimony was inadmissible, and I have not considered that testimony in making these Findings and Conclusions.

## CONCLUSIONS OF LAW

■ 1. The Celmer patent is valid and enforceable.

2. Celmer did not obtain the patent through fraud or inequitable conduct.

3. The process used by Taylor for extracting juice from Concord grapes in the cold pressing method does not infringe Claims 1, 2, 24 and 25. The hot pressing process used by Taylor does not infringe any of the claims in issue.

4. Civil 10,909 is dismissed without costs. Ultimate Research and Development Corp. is entitled to judgment, without costs, adjudging that the Celmer patent is valid and enforceable, and that the patent was not obtained through fraud or inequitable conduct. The judgment should provide, in accordance with these Findings and Conclusions, that Taylor has not infringed any of the claims in issue.

■ 5. Taylor has asked for costs and attorneys' fees against Celmer and Ultimate Research and Development Corp., jointly and severally. Ultimate Research and Development Corp. has asked for attorneys' fees and costs. Neither party is entitled to attorneys' fees or costs.

Settle judgment on five days' notice.

### Order Amending Finding

Ultimate Research and Development Corp., plaintiff in Civil No. 10,931, in accordance with its written motion filed August 31, 1967, moves to have the Court reconsider and to amend certain Findings and Conclusions dated June 29, 1967.

Finding 14 is hereby amended to read as follows:

### Amended Finding 14

The Willmes press was developed in West Germany and introduced in Canada in 1952, and in the United States between 1955 and 1957 by sales to Widmer Wine Company. The Willmes press operates on the same basic theory as the rack and frame process except that the pressure element acts from the inside of the press against a cylindrical cloth rather than exteriorly through the frame containing grape pulp. The Willmes press is used by Taylor in a batch pressing operation. Wine makers prefer batch pressing methods rather than continuous pressing.

In all other respects the motion for reconsideration is denied.

It is hereby so ordered.