THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT LECOMPTE, Defendant-Appellant.

(No. 71-346;

Fifth District—May 8, 1972.

Paul Bradley, of Defender Project, of Mt. Vernon, (Kenneth L. Jones, of counsel,) for appellant.

William J. Scott, Attorney General, of Springfield, and Robert H. Rice, State's Attorney, of Belleville, (Thomas J. Immel, Assistant Attorney General, and Kenneth J. Juen, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE CREBS delivered the opinion of the court:

In a jury trial in the Circuit Court of St. Clair County defendant was convicted of murder and armed robbery and was sentenced to the penitentiary for not less than 198 nor more than 199 years. On this appeal he contends that he was not proved guilty beyond a reasonable doubt and that he was deprived of due process through a combination of circumstances involving incompetence of counsel, improper admission of irrelevant and prejudicial evidence and the failure of the prosecution to produce a written statement of a witness for use in cross-examination. In addition, he objects to the sentence imposed on the grounds that it is vengeful and excessive and in violation of the rationale behind the concept of indeterminacy of sentence.

The incident occurred on March 19, 1968, in Belleville. A lone gunman entered a supermarket about 7:30 o'clock in the evening, fired a shot into the manager's courtesy counter to attract attention, ordered the manager to fill a bag with money, fired another shot into the ceiling as he approached the checkout counters to gather cash from the cash registers and then, on his way out, fired another shot into the floor with the warning that no one should look out the window for five minutes. This last shot ricocheted off the concrete floor and killed one of the checkout girls. After leaving the store he fired another shot back though the glass door, and, as he ran through the parking lot, he fired three more shots at a stock boy who appeared at the back door of the market. Another boy, who lived four houses down the street, heard the shots and saw a man run to, and get in, a black over red car and speed away.

Furnished with the witnesses' description of the robber and the boy's description of the black over red car, the police patrolled the area and about 10:00 o'clock that evening came upon such a car parked in a tavern parking lot. Four police entered the tavern and when one of them called for silence and asked if the owner of the black over red car was present, the defendant bolted from the bar and ran out the front door. In the police pursuit one shot with a riot gun was fired with an order to halt. When this was ignored two more shots were fired, one of which felled the defendant. Lights from a squad car revealed defendant crouching beside two trash barrels in the alley with a gun in each hand. He was ordered to drop the guns, and on his failure to do so, he was shot again in the wrist and his guns fell to the ground beside him.

The keys to the black over red car were found in defendant's pocket, as was approximately $500.00 in various denominations of bills. A ballistics expert testified that four slugs and cartridges recovered in the supermarket had been fired from the .45 caliber gun dropped by the defendant at the time of his apprehension. The store manager positively

identified the defendant as the robber and a number of other witnesses testified that he looked like the robber but they were not positive. The defendant did not testify.

■■ On the basis of these facts defendant attempts to argue that he was not proven guilty beyond a reasonable doubt. He contends that there was only one positive identification, and that among other witnesses there were some differences in their description of the robber. Such argument is usually directed toward convictions based solely on identification testimony, but here the identification is overwhelmingly corroborated by defendant's flight, his possession of the keys to the black over red car, the unexplained large amount of money of various denominations in his pocket, and more particularly, by the ballistics testimony directly linking the gun in his possession with the crime itself. We find such evidence conclusive of defendant's guilt beyond a reasonable doubt. Further argument that the robber was reported to have worn a blue sweater whereas the defendant, when captured three hours later, was not wearing such a sweater, we consider insignificant. And the argument that the police should have accosted a man in the tavern who was wearing a blue sweater instead of pursuing the defendant who ran from the tavern is too incredible for comment.

■■ Defendant next argues that the State failed to produce a statement of the store manager which he recalled had been reduced to writing by the police and which he believed he had signed, though he could not recall for sure. The State replied that it had no such statement in its file and that it was not aware of its existence. The question was not pursued further in the trial court but here defendant contends that the fact the statement was missing and the fact that the hat and sunglasses which the robber wore, and the car he drove, were also not available at the time of trial constituted a wilful suppression of evidence. We cannot agree. In the light of the total record the mere absence of these particular items after a thirteen month interval from the crime to the trial does not necessarily point to bad faith on the part of either the police or the prosecution. The question is whether the statement or the availability of the other items could have reasonably affected the verdict. It appears that the sole purpose of requesting the statement was to prove that the manager had reported that the robber had worn a blue sweater whereas defendant when apprehended was wearing a white shirt and black vest. As mentioned above, even if this were a fact, it is of little significance, as would be the hat, the sunglasses and the car. Apart from these items, proof of defendant's guilt was overwhelming and in the face of such proof the jury could not have reached a different verdict. (See *People v. Wolff*, 19 Ill.2d

318.) We therefore find the absence of the statement and the failure to produce the other items mentioned did not operate to deny defendant either a substantial right or a fair trial.

■■■ Defendant further argues that reversible error occurred through the admission of irrelevant and prejudicial testimony. One witness testified that the victim was a widow and left two married children. Another testified that he saw the pool of blood around the victim's head and that he had cleaned it up. He also stated that he had visited the funeral home. Obviously, this testimony was irrelevant as it had no bearing on the innocence or guilt of the defendant. However, as stated in *People v. Jordan*, 38 Ill.2d 83, such evidence does not *ipso facto* entitle defendant to a new trial. The question is whether such evidence so inflamed the passions of the jury as to sway them from a rational evaluation of the facts in issue. It is our opinion that such isolated incidents above described were not so calculated nor did they have such an effect. On objection, no further reference was made thereto either by subsequent witnesses or in final argument. Under such circumstances we find that though the evidence was improperly received it was harmless and that defendant was not thereby deprived of a fair and impartial trial.

■■■ Proceeding to the question of incompetency of counsel we find that defendant was first represented by retained counsel, and then, after his withdrawal, by court appointed counsel, who also withdrew prior to trial. The court then appointed an individual who was specifically requested by the defendant. He was described by the court as a most competent trial attorney. He had served four years as a State's Attorney and many years as a leading defense counsel. This attorney accepted the appointment in spite of a busy schedule. Defendant's satisfaction with his services and the vigorous defense offered is evidenced by the fact that following defendant's conviction he again requested the court to appoint the same attorney to handle his appeal. From the record it is clear that counsel did all that any attorney could have done under the circumstances. It must be remembered that proper legal representation does not require the manufacturing of a defense where there is none, nor an obfuscation of facts otherwise clear. (*People v. Olmstead*, 32 Ill.2d 306.) The arguments made here ignore the evidence of guilt for which there could be little effective defense and regrettably constitute an attempt to have counsel adjudged incompetent by hindsight and nitpicking. (See *People v. Wesley*, 30 Ill.2d 131.) We find no basis whatsoever for defendant's charge, but to the contrary, find that he was ably represented.

■■ Finally, we agree that a sentence of 198 to 199 years violates the rationale of indeterminacy of sentence. We subscribe to the statement in *People v. Scott*, 117 Ill.App.2d 344, that the principle of indeterminacy

of sentence must necessarily leave to the professionals in the behavioral sciences the determination of the optimum date for release whereas the court, in fixing the maximum, can determine the total length of possible incarceration. The sentence of defendant is therefore reduced to a minimum of 20 years and a maximum of 60 years. With the sentence thus modified, the judgment of the Circuit Court of St. Clair County is affirmed.

Judgment affirmed as modified.

G. MORAN, P. J., and EBERSPACHER, J., concur.