387 S.E.2d 812

**STATE of West Virginia**

v.

**Winston C. FORTNER, Jr.**

No. 18941.

Supreme Court of Appeals of West Virginia.

Dec. 14, 1989.

Michael E. Froble, Public Defender Corp., Tenth Judicial Circuit, Beckley, for Winston C. Fortner, Jr.

Brenda Craig Ellis, Asst. Atty. Gen., Charleston, for State of W.Va.

MILLER, Justice:

This is an appeal by the defendant below, Winston C. Fortner, Jr., from his conviction in the Circuit Court of Cabell County of the crimes of abduction with intent to defile, kidnapping, sexual assault in the second degree, and sexual abuse in the first degree. The defendant contends (1) that his inculpatory statement should have been suppressed; (2) that the State withheld exculpatory evidence; (3) that there was insufficient evidence to support his convictions as an accomplice; (4) that the multiple convictions violate double jeopardy principles; and (5) that his sentence constitutes cruel and unusual punishment. We find no error warranting reversal of the convictions, and we affirm the judgment of the circuit court.

The State's evidence shows that the defendant spent the evening of July 2, 1985, in Raleigh County in the company of his cousin, Randy Fortner, and three acquaintances, Joseph Michael Redden and brothers Samuel and Richard Ellison. At approximately 10:00 p.m., after having visited several bars, the five men were driving around Beckley when they spotted a twenty-three-year-old woman using an outdoor pay phone at an abandoned convenience store. Richard Ellison grabbed the woman, told her he had a gun, and forced her into the car. Samuel Ellison then drove the group three or four miles to a wooded area at the end of a dirt road. Over the next two hours, the five men forced the woman to engage in multiple acts of sexual intercourse.

Despite her pleas to be released, the woman was then forced back into the car and driven around Beckley while her assailants discussed what to do with her. Eventually, the group drove to a tavern in Daniels, where Richard Ellison led the woman over a nearby hill to a creek bank, sexually assaulted her, and attempted to choke her. After about an hour, however, the woman

managed to convince Ellison to take her home. When they arrived at her apartment between 3:00 and 3:30 a.m. and found her husband waiting, Ellison fled.

In the following days, all five men were arrested. A Raleigh County grand jury subsequently returned an indictment charging the defendant with ten counts of second-degree sexual assault, ten counts of first-degree sexual abuse, two counts of conspiracy, and one count each of kidnapping and abduction with intent to defile. Due to adverse publicity in Raleigh County, a change of venue was granted, and trial commenced in the Circuit Court of Cabell County on October 21, 1986.

At trial, the defendant admitted engaging in two separate acts of intercourse with the victim in the wooded area, but asserted that he had participated only because he feared what his companions might do or say if he intervened on her behalf or refused to go along. The defendant denied having encouraged or assisted the others in committing offenses against the victim. This testimony was directly contradicted by the victim, who testified that the defendant actively participated in all aspects of her ordeal.

On October 23, 1986, the jury found the defendant guilty of all charges except conspiracy. The circuit court denied the defendant's motion for a new trial and imposed consecutive and concurrent sentences approximating a term of not less than thirty-six nor more than eighty-five years in prison. This appeal ensued.

I

The defendant first contends that the trial court erred in failing to suppress an incriminating statement he gave the police prior to his arrest. The defendant asserts

that he was not taken before a magistrate without undue delay as required by W.Va. Code, 62–1–5, and Rule 5(a) of the West Virginia Rules of Criminal Procedure [1] and that the statement was therefore inadmissible.

■ We have recognized that delay in presenting an accused to a magistrate after arrest may render a confession obtained in the interim inadmissible at trial. *State v. Dyer*, 177 W.Va. 567, 355 S.E.2d 356 (1987); *State v. Wyant*, 174 W.Va. 567, 328 S.E.2d 174 (1985); *State v. Persinger*, 169 W.Va. 121, 286 S.E.2d 261 (1982). We have consistently held, however, that such a delay is merely one factor to be considered in evaluating the voluntariness of the confession in light of the totality of the circumstances. *State v. Moss*, 180 W.Va. 280, 376 S.E.2d 569 (1988); *State v. Persinger, supra; State v. Mason*, 162 W.Va. 297, 249 S.E.2d 793 (1978). As we stated in Syllabus Point 1 of *State v. Guthrie*, 173 W.Va. 290, 315 S.E.2d 397 (1984):

" 'The delay in taking a defendant to a magistrate may be a critical factor [in the totality of circumstances making a confession involuntary and hence inadmissible] where it appears that the primary purpose of the delay was to obtain a confession from the defendant.' Syllabus Point 6, *State v. Persinger*, [169] W.Va. [121], 286 S.E.2d 261 (1982), as amended."

■ The testimony at trial [2] indicated that the defendant is related to the wife of a Beckley police detective. On July 4, 1985, while attending a picnic at the detective's home, the defendant approached the detective and stated that he wished to go to Beckley to talk to the police. The detective drove the defendant to the Raleigh County Sheriff's Department, where, after having

---

**1.** W.Va.R.Crim.P. 5(a) provides, in pertinent part: "An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before a magistrate within the county where the arrest is made." The relevant language of W.Va.Code, 62–1–5, is essentially the same.

**2.** It appears the trial court fulfilled its obligation to conduct an *in camera* hearing to determine

the voluntariness of the defendant's statement. *See State v. Hilliard*, 173 W.Va. 456, 318 S.E.2d 35 (1983); *State v. Persinger, supra; State v. Fortner*, 150 W.Va. 571, 148 S.E.2d 669 (1966), *overruled on other grounds, State ex rel. White v. Mohn*, 168 W.Va. 211, 283 S.E.2d 914 (1981). However, no transcript of the suppression hearings appears in the record before this Court.

been advised of his *Miranda* rights,[3] the defendant gave a statement implicating himself in the crimes against the victim. A transcript of the tape-recorded statement was prepared by the police and signed by the defendant, who was then placed under arrest and transported to the Beckley Police Department for processing. He was then taken before a magistrate where formal warrants for his arrest on abduction and sexual assault charges were issued.

We cannot say that these facts demonstrate a violation of the prompt presentment rule so as to render the defendant's statement inadmissible at trial. By their terms, W.Va.Code, 62-1-5, and W.Va. R.Crim.P. 5(a) specify that the prompt presentment rule does not come into play until the police arrest or have probable cause to arrest the accused. As we stated in Syllabus Point 2 of *State v. Humphrey*, 177 W.Va. 264, 351 S.E.2d 613 (1986):

> "Our prompt presentment rule contained in W.Va.Code, 62-1-5, and Rule 5(a) of the West Virginia Rules of Criminal Procedure, is triggered when an accused is placed under arrest. Furthermore, once a defendant is in police custody with sufficient probable cause to warrant an arrest, the prompt presentment rule is also triggered."

Here, it appears that the defendant voluntarily initiated contact with the police and requested an opportunity to make a statement. There is no evidence in the record before this Court to indicate that the police had probable cause to arrest the defendant or even considered him a suspect until he made the incriminating statement.

■ Moreover, we have also recognized that "[o]ne of the primary purposes of a prompt presentment statute is to ensure that the police do not use the delay to extract a confession from a defendant through prolonged interrogation." *State v. Hutcheson*, 177 W.Va. 391, 394, 352 S.E.2d 143, 146 (1986). Thus, the focus is generally on the delay which precedes, and can therefore be used to induce, the confession. *State v. Judy*, 179 W.Va. 734, 372 S.E.2d 796 (1988); *State v. Hutcheson, supra.* As

we stated in Syllabus Point 8 of *State v. Worley*, 179 W.Va. 403, 369 S.E.2d 706, *cert. denied*, 488 U.S. 895, 109 S.Ct. 236, 102 L.Ed.2d 226 (1988):

> " 'Ordinarily the delay in taking an accused who is under arrest to a magistrate after a confession has been obtained from him does not vitiate the confession under our prompt presentment rule.' Syllabus Point 4, *State v. Humphrey*, 177 W.Va. 264, 351 S.E.2d 613 (1986)."

Here, it appears that any delay in presentment after the defendant made the statement was attributable to time spent transcribing the oral statement and transporting the defendant to the Beckley Police Department for processing. We have recognized that such delays do not render the defendant's statement involuntary. *State v. Humphrey, supra; State v. Mitter*, 169 W.Va. 652, 289 S.E.2d 457 (1982); *State v. Persinger, supra.*

■ The well established rule in this jurisdiction is stated in Syllabus Point 1 of *State v. Haller*, 178 W.Va. 642, 363 S.E.2d 719 (1987):

> " 'A trial court's decision regarding the voluntariness of a confession will not be disturbed unless it is plainly wrong or clearly against the weight of the evidence.' Syl. Pt. 3, *State v. Vance*, 162 W.Va. 467, 250 S.E.2d 146 (1978)."

The voluntariness of this defendant's statement was tested at pretrial suppression hearings and was resolved by the trial court in favor of admissibility. There is nothing in the record before this Court from which we can conclude that the trial court's ruling was erroneous. Accordingly, we find no reversible error in the admission of the defendant's statement.

## II.

The defendant next contends that the State committed reversible error in not disclosing the fact that the victim had given the police a statement on July 3, 1985, in which she asserted that one of the five men had taken a less active part than the others

---

**3.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

in the sexual offenses against her. The victim stated that this "fifth man," who had been sitting in the back seat of the car, had not had intercourse with her, had not touched her, and, in fact, had tried to offer her moral support during her ordeal at the wooded area. The defendant asserts that he did not become aware of the victim's extrajudicial statement until several months after his trial.[4]

The defendant contends that the victim's statement contained exculpatory material which the prosecution was constitutionally required to disclose. In *State v. Hall*, 174 W.Va. 787, 790, 329 S.E.2d 860, 863 (1985), we recognized the general rule in this regard:

> "In *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215, 218 (1963), the United States Supreme Court held that 'suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.' "

*See also Wilhelm v. Whyte*, 161 W.Va. 67, 239 S.E.2d 735 (1977); *State v. McArdle*, 156 W.Va. 409, 194 S.E.2d 174 (1973). In *State v. Hatfield*, 169 W.Va. 191, 205, 286 S.E.2d 402, 411 (1982), we recognized that the Supreme Court, in *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), had adhered to this rule even in the absence of a defense request for disclosure and had devised the following test for determining the materiality of the undisclosed evidence in such circumstances:

> " 'It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.' 427 U.S. at 112–13, 49 L.Ed.2d at 355, 96 S.Ct. at 2402. (Footnote omitted)"

These principles were consolidated into Syllabus Point 4 of *State v. Hatfield, supra:*

> "A prosecution that withholds evidence which if made available would tend to exculpate an accused by creating a reasonable doubt as to his guilt violates due process of law under Article III, Section 14 of the West Virginia Constitution."

*Accord* Syllabus Point 1, *State v. Hall, supra*. Since then, the United States Supreme Court, in *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481, 494 (1985), has restated the test of materiality as follows: "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."[5]

We do not believe the statement withheld by the prosecution contains clear-

---

4. The State does not deny that the prosecution had possession of the statement and failed to disclose it to the defense prior to or during trial.

5. The defendant contends that the standard of review is the one applied in cases of nondisclosure of court-ordered discovery: "The nondisclosure is prejudicial where the defense is surprised on a material issue and where the failure to make the disclosure hampers the preparation and presentation of the defendant's case." Syllabus Point 1, in part, *State v. Johnson*, 179 W.Va. 619, 371 S.E.2d 340 (1988); Syllabus Point 2, in part, *State v. Grimm*, 165 W.Va. 547, 270 S.E.2d 173 (1980). We have repeatedly recognized, however, the distinction between the disclosure of exculpatory evidence, which is constitutionally mandated under *Brady* and its progeny, and the production of evidence pursuant to a court order implementing discovery. *See State v. Johnson, supra; State v. Miller*, 178 W.Va. 618, 363 S.E.2d 504 (1987); *State v. Hatfield, supra; State v. Brewster*, 164 W.Va. 173, 261 S.E.2d 77 (1979). The record before this Court discloses no court order requiring the State to produce extrajudicial statements of the victim. Accordingly, the *Grimm* standard of review has no application here.

ly exculpatory material within the meaning of this rule. The uncontested evidence at trial shows that the defendant and Joseph Michael Redden occupied the back seat of the vehicle throughout the evening. Although it appears that at one point during the evening the defendant held the victim's hand, a gesture which may or may not have been intended to lend support, the defendant admitted that he had engaged in two separate acts of sexual intercourse with her in the wooded area. The defendant could not, therefore, have been the "fifth man" to whom the victim referred in the statement, and, as a consequence, the information contained in the statement did not have a direct bearing upon the issue of his guilt or innocence. *See Brady v. United States, supra; State v. Brewster,* 164 W.Va. 173, 261 S.E.2d 77 (1979); *State v. Bolling,* 162 W.Va. 103, 246 S.E.2d 631 (1978).

Of course, any inconsistencies between the extrajudicial statement and the victim's testimony could have been used to impeach her credibility at trial. We have recognized that evidence reflecting on the credibility of a key prosecution witness may be so material to the issue of guilt as to qualify as exculpatory matter which the prosecution is constitutionally required to disclose under *Hatfield. State v. Hall,* 174 W.Va. at 790, 329 S.E.2d at 863. *See also United States v. Bagley, supra; Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *McDowell v. Dixon,* 858 F.2d 945 (4th Cir.1988), *cert. denied,*

489 U.S. 1033, 109 S.Ct. 1172, 103 L.Ed.2d 230 (1989); *State v. Hoard,* 180 W.Va. 111, 375 S.E.2d 582 (1988); *State v. McKinney,* 178 W.Va. 200, 358 S.E.2d 596 (1987).

■ Here, we do not believe the victim's extrajudicial statement qualifies as exculpatory impeachment evidence. At trial, the victim testified that while the other four men had subjected her to multiple acts of intercourse involving both vaginal and oral penetration, Joseph Michael Redden, the only other occupant of the back seat of the car, had been unable to attain an erection and had engaged her in a single act of cunnilingus. This testimony is consistent with the victim's extrajudicial statement that the "fifth man" did not have intercourse with her.[6] The victim also testified at trial that between acts of intercourse, the defendant, Randy Fortner, and the Ellison brothers had fondled her breasts and vagina. These acts gave rise to the charges of sexual abuse.[7] At no time, however, did the victim state that Redden participated in such activity, nor does it appear that he was ever charged with sexual abuse.[8] This testimony is consistent with the victim's extrajudicial statement that the "fifth man" did not touch her.

In short, we believe that this evidence is, in the main, consistent with the statement the victim gave the police on July 3, 1985. Her testimony as to Redden's activities at the wooded area clearly is consistent with

**6.** At trial, the victim used the terms "regular sex" or "regular intercourse" to refer to the insertion of the penis into the vagina and the term "oral sex" to refer to the insertion of the penis into the mouth. The victim seemed at a loss, however, for a term to describe the act of cunnilingus. All three acts are considered "sexual intercourse" within the meaning of W.Va. Code, 61–8B–1(7) (1984), the statute then in effect: " 'Sexual intercourse' means any act between persons not married to each other involving penetration, however slight, of the female sex organ by the male sex organ or involving contact between the sex organs of one person and the mouth or anus of another person." The 1986 amendment to W.Va.Code, 61–8B–1, which is currently in effect, did not change this provision. *See* 1986 W.Va. Acts, 1st Ex.Sess., ch. 11.

**7.** W.Va.Code, 61–8B–7 (1984), provides, in pertinent part: "(a) A person is guilty of sexual

abuse in the first degree when: (1) Such person subjects another person to sexual contact without their consent, and the lack of consent results from forcible compulsion[.]" "Sexual contact" is defined in W.Va.Code, 61–8B–1(6) (1984), as

"any intentional touching, either directly or through clothing, of the anus or any part of the sex organs of another person, or the breasts of a female or intentional touching of any part of another person's body by the actor's sex organs, where the victim is not married to the actor and the touching is done for the purpose of gratifying the sexual desire of either party."

**8.** The record reflects that Redden pled guilty to one count of second-degree sexual assault.

her extrajudicial assertion that the "fifth man" did not participate as aggressively as the others in the sexual offenses against her. Such discrepancies as do exist were minor or insignificant and were not such as would have raised a reasonable doubt as to the defendant's guilt had the statement been offered at trial. *See McDowell v. Dixon, supra; State v. Connell,* 478 So.2d 1176 (Fla.App.1985); *People v. LeCompte,* 5 Ill.App.3d 616, 283 N.E.2d 705 (1972); *Simos v. State,* 53 Wis.2d 493, 192 N.W.2d 877 (1972). Accordingly, we find that the nondisclosure of the victim's statement does not warrant a new trial.

### III.

The defendant was convicted of ten counts of second-degree sexual assault[9] and ten counts of first-degree sexual abuse.[10] On sixteen of these counts, the jury found the defendant guilty as an accessory or an aider and abettor. The defendant contends that the evidence was not sufficient to support these convictions.

In *State ex rel. Brown v. Thompson,* 149 W.Va. 649, 654, 142 S.E.2d 711, 715, *cert. denied,* 382 U.S. 940, 86 S.Ct. 392, 15 L.Ed.2d 350 (1965), we delineated the distinction between parties to offenses: "[A] person who is the absolute perpetrator of a crime is a principal in the first degree and ... a person who is present, aiding and abetting the fact to be done, is a principal in the second degree." (Citations omitted). In Syllabus Point 2, we stated:

"An accessory before the fact is a person who being absent at the time and place of the crime, procures, counsels, commands, incites, assists or abets another person to commit the crime, and absence at the time and place of the crime is an essential element of the status of an accessory before the fact."

*Accord* Syllabus Point 2, *State v. Nicholson,* 162 W.Va. 750, 252 S.E.2d 894 (1979). Thus, the chief difference between a principal in the second degree and an accessory before the fact is that the former is actually or constructively present at the time and place of the commission of the offense, while the latter is absent. *State v. Grimmer,* 162 W.Va. 588, 251 S.E.2d 780 (1979). *See State ex rel. Brown v. Thompson, supra; State v. Davis,* 139 W.Va. 645, 81 S.E.2d 95 (1954), *overruled on other grounds, State v. Bragg,* 140 W.Va. 585, 87 S.E.2d 689 (1955); *State v. Bailey,* 63 W.Va. 668, 60 S.E. 785 (1908). *See generally* 22 C.J.S. *Criminal Law* §§ 132, 133 at 163–64 (1989); 2 W. LaFave & A. Scott, *Substantive Criminal Law* § 6.6(c) (1986).

In *State v. Petry,* 166 W.Va. 153, 273 S.E.2d 346 (1980), we abolished the distinctions between parties at the indictment stage and expressly overruled prior cases which had required a defendant to be charged as a principal in the second degree or an accessory to be convicted as such. Relying, in part, on W.Va.Code, 61–11–6 (1923), which provides, in pertinent part, that "[i]n the case of every felony, every principal in the second degree, and every accessory before the fact, shall be punishable as if he were the principal in the first degree," we concluded in Syllabus Point 1, in part, of *Petry* that "hereafter, a general indictment as a principal in the first degree shall be sufficient to sustain a conviction as an aider and abettor or as an accessory before the fact." *Accord State v. Reedy,* 177 W.Va. 406, 352 S.E.2d 158 (1986).

These distinctions retain their vitality for other purposes. Being an accessory before the fact or a principal in the second degree is not, of itself, a separate crime, but is a basis for finding liability for the underlying crime. *See State v. C.J.S.,* 164 W.Va. 473, 263 S.E.2d 899 (1980); *State ex rel. Brown v. Thompson, supra.* In essence, evidence of such complicity sim-

9. W.Va.Code, 61–8B–4 (1984), provides, in pertinent part: "(a) A person is guilty of sexual assault in the second degree when: (1) Such person engages in sexual intercourse or sexual intrusion with another person without the person's consent, and the lack of consent results

from forcible compulsion[.]" For the statutory definition of "sexual intercourse," see note 6, *supra.*

10. For the statutory definition of first-degree sexual abuse, see note 7, *supra.*

ply establishes an alternative theory of criminal liability, i.e., another way of committing the underlying substantive offense. *In re Luis R.*, 204 Conn. 630, 528 A.2d 1146 (1987); *Stonebraker v. State*, 505 N.E.2d 55 (Ind.1987). Where the evidence is in conflict as to whether the defendant perpetrated the crime himself or aided and abetted another in the commission of the offense, the jury may properly be instructed on both theories of accountability. *See People v. Thomas*, 72 Ill.App.3d 28, 27 Ill. Dec. 908, 389 N.E.2d 1316 (1979); *Hoskins v. State*, 441 N.E.2d 419 (Ind.1982); *State v. Caouette*, 462 A.2d 1171 (Me.1983); *People v. Burgess*, 67 Mich.App. 214, 240 N.W.2d 485 (1976); *State v. Thresher*, 122 N.H. 63, 442 A.2d 578 (1982); *State v. Morales*, 111 N.J.Super. 521, 269 A.2d 530 (1970), *appeal denied*, 57 N.J. 433, 273 A.2d 60 (1971). Similarly, where the defendant is convicted of a particular substantive offense, the test of the sufficiency of the evidence to support the conviction necessarily involves consideration of the traditional distinctions between parties to offenses. Thus, a person may be convicted of a crime so long as the evidence demonstrates that he acted as an accessory before the fact, as a principal in the second degree, or as a principal in the first degree in the commission of such offense.

■ To be convicted as an aider and abettor, the law requires that the accused "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir.1938), *quoted with approval in Nye & Nissen v. United States*, 336 U.S. 613, 619, 69 S.Ct. 766, 770, 93 L.Ed. 919, 925 (1949), and *State v. Harper*, 179 W.Va. 24, 28, 365 S.E.2d 69, 73 (1987). The State must demonstrate that the defendant "shared the criminal intent of the principal in the first degree." *State v. Harper*, 179 W.Va. at 29, 365 S.E.2d at 74. (Citations omitted). In this regard, the accused is not required to have intended the particular crime committed by the perpetrator, but only to have knowingly intended to assist, encourage, or facilitate the design of the

criminal actor. *State v. Harper, supra; State v. West*, 153 W.Va. 325, 168 S.E.2d 716 (1969). The intent requirement is relaxed somewhat where the defendant's physical participation in the criminal undertaking is substantial. *United States v. Miller*, 552 F.Supp. 827 (N.D.Ill.E.D.1982), *aff'd, United States v. Matook*, 729 F.2d 1464 (7th Cir.1984). *See United States v. Martinez*, 555 F.2d 1269 (5th Cir.1977); *Yent v. State*, 9 Ark.App. 356, 660 S.W.2d 178 (1983); *In the Matter of J.W.Y.*, 363 A.2d 674 (D.C.App.1976); *People v. Scherzer*, 179 Ill.App.3d 624, 128 Ill.Dec. 598, 534 N.E.2d 1043 (1989); *Commonwealth v. Soares*, 377 Mass. 461, 387 N.E.2d 499, *cert. denied*, 444 U.S. 881, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979); *People v. White*, 147 Mich.App. 31, 383 N.W.2d 597 (1985).

■ We have recognized that mere presence at the scene of the crime, even with knowledge of the criminal purpose of the principal in the first degree, is not, alone, sufficient to make the accused guilty as a principal in the second degree. As we stated in Syllabus Point 3 of *State v. Haines*, 156 W.Va. 281, 192 S.E.2d 879 (1972):

> " 'Merely witnessing a crime, without intervention, does not make a person a party to its commission unless his interference was a duty, and his non-interference was one of the conditions of the commission of the crime; or unless his non-interference was designed by him and operated as an encouragement to or protection of the perpetrator.' Syllabus, *State v. Patterson*, 109 W.Va. 588 [155 S.E. 661]."

*See also State v. Hoselton*, 179 W.Va. 645, 371 S.E.2d 366 (1988); *State v. Martin*, 112 W.Va. 88, 163 S.E. 764 (1932); *State v. Johnson*, 104 W.Va. 586, 140 S.E. 532 (1927). However, proof that the defendant was present at the time and place the crime was committed is generally acknowledged to be a factor to be considered by the jury in determining guilt, along with other circumstances, such as the defendant's association with or relation to the perpetrator and his conduct before and after the com-

mission of the crime. *People v. Sims*, 136 Cal.App.3d 942, 186 Cal.Rptr. 793 (1982); *People v. Reed*, 104 Ill.App.3d 331, 60 Ill. Dec. 80, 432 N.E.2d 979 (1982); *Cary v. State*, 469 N.E.2d 459 (Ind.1984); *Fryer v. State*, 325 N.W.2d 400 (Iowa 1982); *Matter of M.D.S.*, 345 N.W.2d 723 (Minn.1984); *State v. Watson*, 716 S.W.2d 398 (Mo.App. 1986); *State v. Newell*, 152 N.J.Super. 460, 378 A.2d 47 (1977); *State v. Bonrud*, 246 N.W.2d 790 (S.D.1976); *State v. McBee*, 644 S.W.2d 425 (Tenn.Crim.App.1982); *Haight v. State*, 654 P.2d 1232 (Wyo.1982). An act of relatively slight importance may render the defendant criminally liable as a participant in the offense. *United States v. Rosa*, 404 F.Supp. 602 (W.D.Pa.1975), *aff'd*, 535 F.2d 1248 (3d Cir.), *cert. denied*, 429 U.S. 822, 97 S.Ct. 71, 50 L.Ed.2d 83 (1976); *Smith v. State*, 640 P.2d 988 (Okla. Crim.1982); *Sartin v. State*, 637 P.2d 897 (Okla.Crim.1981).

■ With these general legal principles in mind, we test the sufficiency of the evidence to support a criminal conviction by our traditional rule set out in Syllabus Point 1 of *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978):

> "In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done."

The evidence here shows that when the victim was first forced into the car, all of the occupants of the vehicle were laughing and shouting "we want some pussy." As they drove toward the wooded area, Samuel Ellison fondled the victim's breasts and vagina while the others continued yelling and laughing.

When the group arrived at the wooded area, the defendant prepared a marijuana cigarette which was consumed by the five men. The victim was then removed from the car, undressed, and placed on a blanket on the hood of the car. With the exception of Redden, each of the men engaged in separate acts of vaginal and oral intercourse with her, sometimes forcing her to participate in two acts at the same time. Between acts of intercourse, each of the men, again with the exception of Redden, fondled her breasts and vagina and yelled comments such as "Don't hog it all," "I'm next," "Let us do something," and "It's my turn." Redden was ridiculed by the others for his inability to attain an erection and subjected the victim to only a single act of oral intercourse.

At the end of the two-hour ordeal, the victim pleaded with her assailants and offered them money to let her go. Instead, she was forced back into the car and driven about town. When the group stopped to buy beer, she asked to use the bathroom, intending to get help, but was denied permission. While driving through Beckley, the defendant and the others discussed what to do with the victim to keep her from reporting them to the police. Their suggestions included throwing her from a bridge.

At the tavern in Daniels, the victim was told to get out of the car and attempted to enter the building with the defendant, Redden, and Randy Fortner, but was stopped by the Ellison brothers. The defendant stated that he saw Richard Ellison get a blanket from the trunk of the car and walk away with the victim and knew that Ellison was going to sexually assault her again and, perhaps, kill her. The defendant and the others continued to the tavern, where they played pool for some time. Meanwhile, Richard Ellison sexually assaulted and choked the victim on the creek bank. After a time, the defendant and his companions instituted a search for Ellison and could be heard driving up and down the highway calling his name. Ellison did not respond, however, and the others eventually left. The victim obtained her release only by convincing Ellison to take her home.

358

Clearly, this defendant was not merely an innocent bystander or spectator of the sort we found in *Hoselton, Haines, Patterson,* or *Johnson.* He actively participated in the criminal venture in a substantial way. In addition to the unlawful acts the defendant himself perpetrated, the evidence shows that he assisted his companions in removing the victim's clothing and encouraged them by joining with them in taunting her and in ridiculing Redden for his inability to attain an erection. The evidence further demonstrated that the defendant shared the festive and boisterous attitude of his companions towards the entire episode.

■ Other jurisdictions have found the accused guilty of aiding and abetting a sexual offense on less evidence. In *State v. Joyner,* 297 N.C. 349, 255 S.E.2d 390 (1979), for example, five men forced their way into a woman's home and committed a variety of sexual acts against her. One of the men also robbed her. In rejecting the contention of the defendant, who had engaged in at least two separate acts of intercourse with the victim, that he could not be held criminally liable for the robbery and the sexual offenses committed by his companions in his presence, the North Carolina court in *Joyner,* 297 N.C. at 357, 255 S.E.2d at 395, relied on the principle of concerted action:

"It is not, therefore, necessary for a defendant to do any particular act constituting at least part of a crime in order to be convicted of that crime under the concerted action principle so long as he is present at the scene of the crime and the evidence is sufficient to show he is acting together with another who does the acts necessary to constitute the crime pursuant to a common plan or purpose to commit the crime."

Thus, under the concerted action principle, a defendant who is present at the scene of a crime and, by acting with another, contributes to the criminal act, is criminally liable for such offense as if he were the sole perpetrator. *See also Simmons v. State,* 262 Ind. 300, 315 N.E.2d 368 (1974); *People v. Lopez,* 116 Cal.App.3d 882, 172

Cal.Rptr. 374 (1981); *State v. Boone,* 519 S.W.2d 27 (Mo.App.1975).

In *People v. Mummert,* 57 Cal.App.2d 849, 135 P.2d 665 (1943), *overruled on other grounds, People v. Collins,* 54 Cal.2d 57, 4 Cal.Rptr. 158, 351 P.2d 326 (1960), a female hitchhiker was successively raped by each of the four men who gave her a ride. Each defendant was convicted of sexually assaulting the victim himself and of aiding and abetting the other three in sexually assaulting her. On appeal, the defendants asserted that the evidence was insufficient to support their convictions as aiders and abettors. In *Mummert,* 57 Cal. App.2d at 855, 135 P.2d at 668, the Court of Appeals rejected this argument, stating:

"At the time of the rape by each of the men the other three stood near by and abetted the perpetrator by presenting a show of force and by keeping watch against intrusion. As each without resentment toward his acting confederate and without concern for the girl permitted the outrage, they exemplified a united and single purpose which would brook no interference. Each thus encouraged and aided his several companions and was therefore a principal in each of the crimes. (*People v. Best,* 43 Cal.App.2d 100, 105, [110 P.2d 504].)"

*See also People v. Bynes,* 223 Cal.App.2d 268, 35 Cal.Rptr. 633 (1963); *Commonwealth v. Whitehead,* 379 Mass. 640, 400 N.E.2d 821 (1980); *State v. Braxton,* 294 N.C. 446, 242 S.E.2d 769 (1978); *Commonwealth v. Shriner,* 232 Pa.Super. 306, 332 A.2d 501 (1974).

Finally, in *State v. Goodwin,* 118 N.H. 862, 395 A.2d 1234 (1978), and *Commonwealth v. Henderson,* 249 Pa.Super. 472, 378 A.2d 393 (1977), neither defendant committed any unlawful physical acts against the victim. In each case, the accused assisted his companion in enticing the victim into joining them and then sat by passively while his companion sexually assaulted the victim. In *Goodwin,* the defendant even attempted at various times to dissuade his companion from harming the victim, though he did not physically interfere with the sexual assault. In both cases, it was

held that there was sufficient evidence of complicity to support the defendant's rape convictions. *See also Diaz v. State,* 444 N.E.2d 340 (Ind.App.1983); *State v. McBee,* 644 S.W.2d 425 (Tenn.Crim.App.1982).

Here, the defendant's conduct was clearly more culpable. By his presence, words, and actions, he contributed to the criminal acts of his confederates. Accordingly, we find sufficient evidence of record to support his convictions as a principal in the second degree to first-degree sexual abuse and second-degree sexual assault.

Nor do we believe that the defendant's absence at the time and place of Richard Ellison's final sexual assault on the victim near the tavern renders his conviction therefor invalid. In *People v. Lacey,* 49 Ill.App.2d 301, 200 N.E.2d 11 (1964), a woman was forcibly taken from a public street to a nearby building where she was robbed and then raped. The defendant asserted that he had left the premises immediately after the robbery and had not witnessed, participated in, or encouraged the sexual assaults. In affirming the defendant's rape conviction, the court in *Lacey,* 49 Ill.App.2d at 307, 200 N.E.2d at 14, made this statement:

> "A person who encourages the commission of an unlawful act cannot escape responsibility by quietly withdrawing from the scene. *People v. Marx,* [291 Ill. 40, 48, 125 N.E. 719, 722 (1919)]....
>
> "To be timely a withdrawal must be such as to give his coconspirators a reasonable opportunity, if they desire, to follow his example and refrain from further action before the act is committed, and it must be possible for the trier of fact to say that the accused had wholly and effectively detached himself from the criminal enterprise before the act with which he is charged is in the process of consummation or has become so inevitable that it cannot reasonably be stayed. *People v. Brown,* 26 Ill2d 308, 312, 313, 186 NE2d 321 (1962). In order to constitute an effective withdrawal some kind of disapproval or opposition must be shown to the activities which the defendant knew had either preceded or were about to proceed. *People v. Marx,* (supra [291 Ill.] at 48 [125 N.E. 719]). No such disapproval appears here at all."

Thus, for a defendant to claim that he withdrew from a criminal venture so as to avoid criminal responsibility, he must show that he disavowed the criminal purpose sufficiently in advance of the act to give his confederates a reasonable opportunity to withdraw, if they so desired, and did so in such a manner as to communicate to them his disapproval of or opposition to the criminal act. *See West v. United States,* 499 A.2d 860 (D.C.App.1985); *State v. Pierson,* 610 S.W.2d 86 (Mo.App.1980); *State v. Thomas,* 140 N.J.Super. 429, 356 A.2d 433 (1976), *rev'd on other grounds,* 76 N.J. 344, 387 A.2d 1187 (1978); *People v. Nichols,* 230 N.Y. 221, 129 N.E. 883 (1921); *State v. Spears,* 268 N.C. 303, 150 S.E.2d 499 (1966); *Blevins v. Commonwealth,* 209 Va. 622, 166 S.E.2d 325 (1969). *See generally* 1 *Wharton's Criminal Law* § 37 at 190–91 (1978); 22 C.J.S. *Criminal Law* § 136 at 170–71 (1989).

Here, it is clear that the defendant participated in the earlier sexual assaults at the wooded area and continued to associate with his companions and to participate in their activities thereafter. The defendant clearly acquiesced in what he perceived to be Richard Ellison's criminal intent towards the victim at the tavern and attempted to continue his association with Ellison afterwards by looking for him before leaving the area. In short, there is no evidence that the defendant ever disassociated himself from the criminal enterprise, much less expressed any disapproval of or opposition to the acts of his companions. Accordingly, we find the evidence sufficient to support this conviction.

## IV.

The defendant next contends that because many of the charges against him arose out of the same act or transaction, the multiple convictions violated the double jeopardy clauses of our state and federal

constitutions.[11] In Syllabus Point 1 of *State v. Myers*, 171 W.Va. 277, 298 S.E.2d 813 (1982), we stated the accepted rule in this regard:

" 'The Double Jeopardy Clause in Article III, Section 5 of the West Virginia Constitution, provides immunity from further prosecution where a court having jurisdiction has acquitted the accused. It protects against a second prosecution for the same offense after conviction. It also prohibits multiple punishments for the same offense.' Syl. pt. 1 of *Connor v. Griffith,* [160] W.Va. [680], 238 S.E.2d 529 (1977)."

*See also State v. Hersman,* 161 W.Va. 371, 242 S.E.2d 559 (1978). The same rule obtains under the Fifth Amendment to the United States Constitution. *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

As all of the defendant's convictions resulted from a single proceeding, the only issue on appeal is whether multiple punishments were imposed for the same offense. The defendant was found guilty of ten counts of second-degree sexual assault, ten counts of first-degree sexual abuse, and one count each of kidnapping and abduction. The trial judge imposed the following consecutive sentences of imprisonment: three terms of not less than ten nor more than twenty years for second-degree sexual assault, W.Va.Code, 61–8B–4 (1984); three terms of not less than one nor more than five years for first-degree sexual abuse, W.Va.Code, 61–8B–7 (1984); and one term of not less than three nor more than ten years for abduction, W.Va.Code, 61–2–14 (1984). The remainder of the sentences, including the sentence of life with possibility of parole imposed for the kidnapping conviction, W.Va.Code, 61–2–14a (1965), were ordered to run concurrently with these penalties.

### A.

■ The defendant first contends that his conviction of both kidnapping and abduction violates the double jeopardy prohibition.[12] The State charged the defendant with abduction in connection with the initial seizure and movement of the victim to the wooded area for the purpose of sexually assaulting her. The kidnapping charges arose from the subsequent forcible removal of the victim from the wooded area for the purpose of avoiding arrest. The defense argues that because the victim was continuously under the control of her captors throughout the evening, he is guilty of but a single continuing offense.

■ Our abduction statute, W.Va.Code, 61–2–14, defines the offense of abduction with intent to defile as the taking away or

---

**11.** The Fifth Amendment to the Constitution of the United States provides, in pertinent part: "No person shall ... be subject for the same offense to be twice put in jeopardy of life or limb[.]"

Article III, Section 5 of the West Virginia Constitution provides, in pertinent part: "No person shall ..., in any criminal case, ... be twice put in jeopardy of life or liberty for the same offence."

**12.** The fact that these convictions resulted in concurrent sentences does not render the double jeopardy issue moot. In *Ball v. United States,* 470 U.S. 856, 864–65, 105 S.Ct. 1668, 1673, 84 L.Ed.2d 740, 748 (1985), the Supreme Court recently recognized that double jeopardy consequences could attach where one of several concurrent sentences was held invalid on appeal:

"The second conviction, whose concomitant sentence is served concurrently, does not evaporate simply because of the concurrence of the sentence. The separate *conviction,* apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored. For example, the presence of two convictions on the record may delay the defendant's eligibility for parole or result in an increased sentence under a recidivist statute for a future offense. Moreover, the second conviction may be used to impeach the defendant's credibility and certainly carries the societal stigma accompanying any criminal conviction. See *Benton v. Maryland,* 395 U.S. 784, 790–791 [89 S.Ct. 2056, 2060–2061, 23 L.Ed.2d 707] (1969); *Sibron v. New York,* 392 U.S. 40, 54–56 [88 S.Ct. 1889, 1898–1899, 20 L.Ed.2d 917] (1968). Thus, the second conviction, even if it results in no greater sentence, is an impermissible punishment." (Emphasis in original).
Thus, the *Supreme Court* concluded that the proper remedy was remand for vacation of the invalid conviction and resentencing. This reasoning is especially appropriate where, as here, the concurrent sentences are not identical.

detention of a person "against such person's will, with intent to marry or defile the person, or to cause the person to be married or defiled by another person[.]" [13] Our kidnapping statute, W.Va.Code, 61–2–14a, embraces different types of nonconsensual restraint or movement of a victim for a variety of purposes.[14] We have recognized that the statutory definition of kidnapping is broad enough to encompass "almost any forced movement or detention within the State." *State v. Miller,* 175 W.Va. 616, 620, 336 S.E.2d 910, 914 (1985).

The fact that these offenses are defined in separate statutes does not make them separate offenses for purposes of double jeopardy. As we stated in *State v. Reed,* 166 W.Va. 558, 567, 276 S.E.2d 313, 319–20 (1981):

> "Since many statutory crimes are duplicative, it is well established that separate statutory crimes may be the 'same offense' under the double jeopardy clause, even though they are not identical in either constituent elements or actual proof. *Brown v. Ohio,* 432 U.S. 161 [97 S.Ct. 2221, 53 L.Ed.2d 187] (1977). Each case ultimately turns upon whether the Legislature intended an act to be punished by only one or by more than one statutory provision. *Gore v. United States,* 357 U.S. 386 [78 S.Ct. 1280, 2 L.Ed.2d 1405] (1958)."

Because it is not always possible to discern legislative intent from the statutory provisions themselves, resort is often had to the *"Blockburger"* test, a rule of statutory construction for determining identity of offenses which was stated in Syllabus Point 1

of *State v. Peyatt,* 173 W.Va. 317, 315 S.E.2d 574 (1983):

> " 'Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.' Syl. pt. 8, *State v. Zaccagnini,* 172 W.Va. 491, 308 S.E.2d 131 (1983), *quoting Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)."

*See also Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980); *State v. Williams,* 172 W.Va. 295, 305 S.E.2d 251 (1983); *State v. Fairchild,* 171 W.Va. 137, 298 S.E.2d 110 (1982).

In *Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981), the Supreme Court addressed the question of whether consecutive sentences imposed on the defendants following their convictions of both conspiracy to import marijuana in violation of 21 U.S.C. § 963 and conspiracy to distribute marijuana in violation of 21 U.S.C. § 846 violated the prohibition against double jeopardy because both offenses arose from a single conspiracy or agreement. In rejecting the double jeopardy argument, the Supreme Court concluded:

> "The statutory provisions at issue here clearly satisfy the rule announced in *Blockburger*.... Sections 846 and 963 specify different ends as the proscribed object of the conspiracy—distribution as opposed to importation—and it is beyond peradventure that 'each provision requires proof of a fact [that] the other

---

**13.** W.Va.Code, 61–2–14, provides, in pertinent part:

> "(a) Any person who takes away another person, or detains another person against such person's will, with intent to marry or defile the person, or to cause the person to be married or defiled by another person; or takes away a child under the age of sixteen years from any person having lawful charge of such child, for the purpose of prostitution or concubinage, shall be guilty of a felony[.]"

**14.** W.Va.Code, 61–2–14a, provides, in pertinent part:

> "If any person, by force, threat, duress, fraud or enticement take, confine, conceal, or decoy, inveigle or entice away, or transport into or out of this State or within this State, or otherwise kidnap any other person, for the purpose or with the intent of taking, receiving, demanding or extorting from such person, or from any other person or persons, any ransom, money or other thing, or any concession or advantage of any sort, or for the purpose or with the intent of shielding or protecting himself or others from bodily harm or of evading capture or arrest after he or they have committed a crime, he shall be guilty of a felony[.]"

does not.' Thus, application of the *Blockburger* rule to determine whether Congress has provided that these two statutory offenses be punished cumulatively results in the unequivocal determination that §§ 846 and 963 . . . proscribe separate statutory offenses the violations of which can result in the imposition of consecutive sentences." 450 U.S. at 339, 67 L.Ed.2d at 281–82, 101 S.Ct. at 1142.

*See also American Tobacco Co. v. United States,* 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946). The Court found further support for its conclusion in the fact that the conspiracy statutes were "directed to separate evils" and intended to remedy "diverse societal harms." 450 U.S. at 343, 67 L.Ed.2d at 284, 101 S.Ct. at 1144.

We believe the same result obtains in this case. In Syllabus Point 6 of *State v. Hanna,* 180 W.Va. 598, 378 S.E.2d 640 (1989), we held that "[a] sexual purpose or motivation is an essential element of the offense of abduction with intent to defile contained in W.Va.Code, 61–2–14." *See also State v. Miller,* 175 W.Va. at 620 n. 3, 336 S.E.2d at 914 n. 3. Clearly, the victim here was initially seized at the convenience store for such a purpose. Once that objective was realized, however, she was forced into the car and driven away to prevent her from alerting the police.[15] Forcible movement or detention of a victim "for the purpose or with the intent . . . of evading capture or arrest after [the offenders] have committed a crime" is one of the recognized ways in which the offense of kidnapping may be committed. W.Va.Code, 61–2–14a. Clearly each of these offenses requires proof of a fact which the other does not.

■ Moreover, the clear language of the statutes, as well as the difference in the penalties designated for each offense,[16]

indicates that each provision is designed to remedy a different evil. The abduction statute is intended to protect morals or chastity, while the kidnapping statute is intended to protect the victim's life and liberty. *See United States v. Phillips,* 640 F.2d 87 (7th Cir.), *cert. denied,* 451 U.S. 991, 101 S.Ct. 2331, 68 L.Ed.2d 851 (1981); *Hattaway v. United States,* 399 F.2d 431 (5th Cir.1968).

In sum, we must conclude that the crimes of abduction with intent to defile and kidnapping with intent to avoid arrest are separate offenses. Thus, although the victim was continuously under the control of her captors, in view of the foregoing discussion, we must conclude that the defendant's abduction and kidnapping convictions do not violate the prohibition against double jeopardy.

### B.

■ The defendant also contends that the abduction and kidnapping were merely incidental to the sexual offenses. We have recognized that the offense of kidnapping is so broadly defined that "virtually any movement or detention of a person during the commission of another crime [falls] within the kidnapping statute." *State v. Weaver,* 181 W.Va. 274, 278, 382 S.E.2d 327, 331 (1989). In Syllabus Point 2 of *State v. Miller, supra,* we set the following limitations on the offense of kidnapping in this regard:

"In interpreting and applying a generally worded kidnapping statute, such as W.Va.Code, 61–2–14a, in a situation where another offense was committed, some reasonable limitations on the broad scope of kidnapping must be developed. The general rule is that a kidnapping has not been committed when it is incidental to another crime. In deciding whether the acts that technically constitute kid-

---

**15.** The subsequent sexual assault by Richard Ellison appears to have been no more than an afterthought. The fact that he afterwards choked the victim and apparently considered drowning her reveals his true intent.

**16.** The penalty for abduction with intent to defile is imprisonment for "not less than three nor

more than ten years." W.Va.Code, 61–2–14. The penalty for kidnapping ranges from a minimum sentence of ten years in prison to a maximum penalty of life imprisonment without mercy depending on the circumstances of the commission of the crime. W.Va.Code, 61–2–14a.

napping were incidental to another crime, courts examine the length of time the victim was held or moved, the distance the victim was forced to move, the location and environment of the place the victim was detained, and the exposure of the victim to an increased risk of harm."

*See also State v. Brumfield*, 178 W.Va. 240, 358 S.E.2d 801 (1987). We recently formulated a similar rule with respect to the crime of abduction.[17]

██ Here, the victim was initially seized in an open area from which she could be seen and her screams could be clearly heard by neighboring residents. She was placed in a car with five men and driven to an isolated wooded area several miles away, where she was sexually assaulted for approximately two hours. Thereafter, despite her attempts to secure her release, the victim was returned to the car and driven around town for some time while her captors discussed how to keep her from going to the police. She was then removed from the vehicle and taken from an occupied tavern to a dark creek bank where she was sexually assaulted and physically attacked. It was not until she was able to persuade Ellison to take her home over an hour later that she was able to escape. In all, the victim remained under the control of her captors for approximately five hours.

In these circumstances, we cannot say that the instances of detention and asportation of the victim were merely incidental to the commission of the sexual offenses. Clearly, in each case the movement of the victim increased her risk of harm while decreasing the risk that the criminal acts of her assailants would be interrupted or discovered. The time she was held both before and after the sexual assaults, the distances she was transported, and the change in her captors' intent all support the conclusion that the restraint and movement of the victim were not merely incidental to the sexual offenses. Accordingly, we find no double jeopardy violation in the defendant's convictions of these separate offenses.

### C.

Finally, the defendant asserts that he was guilty of only one sexual offense. He relies on Syllabus Point 4 of *State v. Reed, supra,* wherein we stated: "Double jeopardy prohibits multiple punishment for the same offense, therefore under our criminal sexual conduct statute, *W.Va.Code,* 61–8B–1 *et seq.* [1976], a single sexual act cannot result in multiple criminal convictions." We recently clarified this principle in *State v. Davis,* 180 W.Va. 357, 361, 376 S.E.2d 563, 567 (1988): "[W]here the evidence shows only one continuing sexual offense culminating in a single act of sexual intercourse, conviction and punishment of the accused for unlawful sexual behavior entirely ancillary to such sexual intercourse violates double jeopardy."

In both *Reed* and *Davis,* the defendant was charged with a single act of unlawful sexual intercourse and a single act of unlawful sexual touching. In both cases, we found that the unlawful touching was merely incidental to the consummation of the act of intercourse. As we stated in *Reed,* "unlawful sexual intercourse could not possibly occur without a certain amount of unlawful sexual contact[.]" 166 W.Va. at 569, 276 S.E.2d at 320. We concluded that the legislature had not intended such acts to be punished separately from the act of intercourse and that imposition of cumulative sentences therefore violated double jeopardy principles.

██ Here, however, the uncontested evidence shows that the defendant himself subjected the victim to two separate acts of intercourse. In Syllabus Point 2 of *State*

---

**17.** In Syllabus Point 2 of *State v. Weaver, supra,* we stated:

"A defendant cannot be convicted of abduction under W.Va.Code, 61–2–14(b), if the movement or detention of the victim is merely incidental to the commission of another crime. The factors to be considered in determining whether the abduction is incidental to the commission of another crime are the length of time the victim was held or moved, the distance the victim was forced to move, the location and environment of the place the victim was detained, and the exposure of the victim to an increased risk of harm."

*See State v. Trail,* 174 W.Va. 656, 328 S.E.2d 671 (1985).

*v. Carter,* 168 W.Va. 90, 282 S.E.2d 277 (1981), we stated:

"Where a defendant commits separate acts of our statutorily defined term 'sexual intercourse' in different ways, each act may be prosecuted and punished as a separate offense."

*See also State v. Davis, supra; State v. Richey,* 171 W.Va. 342, 298 S.E.2d 879 (1982); *State v. Reed, supra.*

Moreover, the evidence demonstrates that the multiple acts of sexual abuse with which the defendant was charged were not merely ancillary to the sexual assaults. These acts of unlawful sexual contact were not committed in furtherance of or even as a prelude to the consummation of the defendant's acts of sexual intercourse, but, instead, occurred while the defendant's companions were engaged in sexual intercourse with the victim. The unlawful touching in this instance was not merely incidental to an act of intercourse, and we believe the legislature intended such acts to be tried and punished as separate offenses.

Finally, the State's evidence clearly showed that among them, the defendant's companions subjected the victim to numerous separate acts of intercourse and sexual contact throughout the evening. Clearly, each of these acts, committed by a different person at a different time, was a separate offense. As we have already noted, the evidence at trial was sufficient to demonstrate that the defendant aided and abetted his companions in the perpetration of these offenses. The defendant was, therefore, criminally responsible for each of the separate offenses committed by each of his associates. Accordingly, separate punishments for those offenses do not violate the principles of double jeopardy set out above.

V.

The defendant next asserts that the sentence imposed by the trial court is disproportionate. He argues that cumulatively his sentences constitute cruel and unusual punishment.

Article III, Section 5 of the Constitution of West Virginia provides, in pertinent part: "Excessive bail shall not be required,

nor excessive fines imposed, nor cruel and unusual punishment inflicted. Penalties shall be proportioned to the character and degree of the offence." We have traditionally examined the constitutionality of sentences in light of the proportionality requirement of this provision. *State v. Glover,* 177 W.Va. 650, 355 S.E.2d 631 (1987).

We have also recognized, however, that the proportionality analysis is not applicable to every sentence imposed. In Syllabus Point 4 of *Wanstreet v. Bordenkircher,* 166 W.Va. 523, 276 S.E.2d 205 (1981), we stated:

"While our constitutional proportionality standards theoretically can apply to any criminal sentence, they are basically applicable to those sentences where there is either no fixed maximum set by statute or where there is a life recidivist sentence."

*See also State v. Anderson,* 178 W.Va. 348, 359 S.E.2d 576 (1987); *State v. Carper,* 176 W.Va. 309, 342 S.E.2d 277 (1986). In the text of *Wanstreet,* 166 W.Va. at 531–32, 276 S.E.2d at 211, we quoted the following language from *State v. Houston,* 166 W.Va. 202, 209, 273 S.E.2d 375, 379 (1980):

" 'It should be noted that the robbery by violence statute is one of the few criminal statutes in our jurisdiction that enables the court to set a determinate sentence without reference to any statutory maximum limit. With the exception of the life recidivist statute discussed in *State v. Vance,* [164 W.Va. 216, 262 S.E.2d 423 (1980) ], we do not believe that the disproportionality principle can have any significant application other than to this type of sentencing statute.' " (Footnote omitted).

The sentences imposed by the trial court here were within the statutory penalties prescribed for each of the offenses of which the defendant was convicted. The trial court clearly had the discretion to order the sentences, or some of them, to run consecutively. *Keith v. Leverette,* 163 W.Va. 98, 254 S.E.2d 700 (1979); W.Va.Code, 61–11–21 (1923). We cannot say that the sentences were facially out-

rageous considering the number and character of the offenses involved. As the defendant directs us to no authority for the proposition that cumulative punishments, imposed for separate offenses arising out of the same transaction, violate a constitutional prohibition against disproportionate sentences, we find no basis for ordering resentencing of the defendant on this ground.

## VI.

 Finally, the defendant contends that the trial court erred in allowing the State to introduce into evidence a tape recording of telephone calls received on the night of July 2, 1985, by the Raleigh County Emergency Operations Center (EOC) and in refusing to provide him with a complete transcript of the trial of one of his codefendants. The record before this Court, however, discloses neither a request for a transcript of the prior trial nor any defense objection at trial to the introduction of the EOC tapes or to the failure to provide a transcript. We recently restated the rule in this regard in Syllabus Point 4 of *State v. Nicastro*, 181 W.Va. 556, 383 S.E.2d 521 (1989):

> " 'As a general rule, proceedings of trial courts are presumed to be regular, unless the contrary affirmatively appears upon the record, and errors assigned for the first time in an appellate court will not be regarded in any matter of which the trial court had jurisdiction or which might have been remedied in the trial court if objected to there.' Syl. pt. 17, *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974)."

As the record reveals no proper defense motion or objection below to bring these matters to the attention of the trial court, we must conclude that the defendant has failed to preserve any error therein for consideration on appeal.

## VII.

For the reasons stated herein, we find no error warranting reversal of the convictions or remand for resentencing. The judgment of the Circuit Court of Cabell County is, therefore, affirmed.

Affirmed.